IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0151

_____

FILED

**May 17, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EDITH YOUNG,
Plaintiff below, Petitioner

v.

EOSCCA,
Defendant below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
Honorable Charles E. King
Civil Action No. 14-C-1326

AFFIRMED

_____

Submitted:  May 2, 2017
Filed:  May 17, 2017

Benjamin M. Sheridan, Esq.          Nicholas P. Mooney, Esq.
Klein & Sheridan, LC                Nicholas S. Preservati, Esq.
Hurricane, West Virginia            David L. Shuman, Jr., Esq.
Counsel for Petitioner              Spilman Thomas & Battle, PLLC
                                    Charleston, West Virginia
                                    Counsel for Respondent

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS

By limiting the right to recover for a violation of the West Virginia Consumer Credit and Protection Act to those persons defined as "consumers," the Legislature has expressly prohibited any persons falling outside the definition of a "consumer" from seeking damages and statutory penalties pursuant to the provisions of West Virginia Code § 46A-5-101 (2015).

LOUGHRY, Chief Justice:

The petitioner, Edith Young, appeals from the February 2, 2016, order of the Circuit Court of Kanawha County granting summary judgment to the respondent, EOS CCA[1] ("EOS"), in connection with her complaint against EOS asserting, *inter alia*, violations of the West Virginia Consumer Credit and Protection Act (the "Act").[2] Ms. Young challenges the circuit court's ruling that she is not a "consumer" within the applicable definitions of the Act.[3] Upon careful scrutiny of the Act's provisions, we do not find that the circuit court committed error and, accordingly, affirm.

## I. Factual and Procedural Background

Ms. Young filed her complaint against EOS on July 23, 2014, alleging that

---

[1]According to respondent's corporate representative, EOS USA, EOS CCA, and Collecto, Inc. are the same company and have the same parent company–EOS Group, which is based in Germany.

[2]*See* W.Va. Code §§ 46A-1-1 to -8-102 (2015 & Supp. 2016).

[3]Although the parties filed a motion to withdraw several days before the case was set for argument indicating they had reached a settlement agreement in this matter, we choose to address the statutory issue presented in this case to resolve a matter that is likely to be raised again and yet evade review by this judicial body. *See* Syl. Pt. 1, *Israel by Israel v. W.V.S.S.A.C.*, 182 W.Va. 454, 388 S.E.2d 480 (1989) (announcing three-part test for addressing technically moot issues); Syl. Pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984) ("A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.").

1

EOS, a debt collector, had violated the Act by engaging in unreasonable or oppressive or abusive conduct in an attempt to collect a debt. She averred that EOS had repeatedly called her home and continued to attempt to communicate with her after she indicated she was represented by counsel. In addition to asserting violations of the Act, Ms. Young alleged common law claims grounded in negligence, intentional infliction of emotional distress, and invasion of privacy.

Discovery in this matter ensued in accordance with the trial court's issuance of a scheduling order. When Ms. Young was deposed in November 2015, she answered preliminary questions to confirm that she resided with her husband, who was then eighty-three and suffering from Alzheimer's,[4] and to verify that she had the same telephone number for all times relevant to this case. Ms. Young testified regarding a document tendered through discovery on which she had recorded her receipt of numerous phone calls from the same 800 number.[5] She testified that "Bank Americard" appeared on her caller ID when each of those phone calls rang into her home.[6] According to her testimony, Ms. Young

---

[4]Ms. Young indicated that she, too, suffered from some health problems and took medication that might have an affect on her recall abilities.

[5]That number was 800-478-5852.

[6]An affidavit prepared by Catherine Belmore, a business analyst for EOD CCA, averred that "EOS CCA does not cause 'Bank of America,' 'Bank America Card,' 'Bank Americard,' or any such similar moniker to be displayed on a caller identification device when it places telephone calls to collect on an account."

2

never picked up the phone to speak with the caller; she just registered the caller's identifying information that appeared on her phone. On one occasion, however, Ms. Young contends she did answer the phone. She purportedly informed the caller on August 13, 2013, when her caller ID revealed the caller as Bank Americard, that they should contact her attorney.[7] She further admits, however, that "I don't know who was on the other end. I didn't hear nobody." Ms. Young also acknowledges that the call might have been for someone other than herself.

While Ms. Young admittedly has a credit-related debt with Bank Americard,[8] she does not have any specific debt in connection with the calls that EOS made to her land line phone. The calls EOS made to Ms. Young's home were in an attempt to locate an AT&T customer who was delinquent on his account.[9] That entity is a non-party to this lawsuit, whose identity the trial court permitted the respondent to protect. Ms. Young asserts that seventy-three such calls were made by EOS. The corporate records of EOS

_____

[7]The record in this case contains an averment from Catherine Belmore, business analyst, that "EOS CCA has no record of receiving attorney notification from Edith Young."

[8]When asked why she filed suit against EOS, she testified, "I did not file against them." Ms. Young insisted that her claim involved the credit card issuers such as Bank Americard to whom she owed money. The record is clear that EOS did not collect funds for Bank Americard at any time pertinent to this lawsuit; they stopped doing so on July 23, 2010.

[9]EOS believes that it retrieved the Young residence number from a skip trace service provided by LexisNexis.

reflect that same number of contacts being made to the phone number associated with Ms. Young's residence.[10]

During the deposition of Brian Soule, the corporate manager of training and development at EOS USA, the petitioner's counsel played a recording of a purported telephone conversation between EOS and Ms. Young that allegedly occurred on September 5, 2013. The caller asked for either "Jim" or "James,"[11] to which Ms. Young responded that "he's not home or he's not available or he's not there."[12] Mr. Soule explained that EOS would stop calling a third-party number such as Ms. Young's where they were simply trying to gain information helpful to locate the actual consumer with the subject debt "if they indicated to us that the person does not live there and we have the wrong number or asked us to stop calling." While Mr. Soule testified that their company records lacked any notation of this conversation, he indicated that such an omission may have been a systemic collection error.

---

[10]As respondent's corporate manager of training and development explained, the phone calls to Ms. Young's residence–since she was not listed as the consumer on an AT&T account–were being made to locate the actual consumer.

[11]During the hearing on EOS' motion for summary judgment, the petitioner's counsel argued that the recording suggests the caller asked if "GLEMP" was there. However, during the deposition of Mr. Soule, there was no discussion concerning the clarity of the recording in terms of the caller asking for either "Jim" or "James."

[12]Ms. Young testified that her husband, her son, and her grandson are all named James Young.

On December 11, 2015, EOS filed a motion for summary judgment in which it asserted Ms. Young lacked standing to seek relief under the Act because she failed to fall within the applicable definitions of "consumer" provided in the Act. In an attempt to defeat the standing argument, the petitioner filed an affidavit in which she avowed her status as a consumer in general due to debts she owed to Bank of America, Home Depot, Suddenlink Communications, and several other unnamed corporations.

Following a hearing on the summary judgment motion,[13] the trial court issued an order on February 2, 2016, granting summary judgment to EOS and dismissing the petitioner's complaint. In its ruling, the trial court examined the definitions of the term "consumer" provided in the Act and concluded that the record is clear that the petitioner "does not owe a debt to Defendant [EOS]." As the circuit court reasoned, the "Defendant was calling the Number to collect a debt owed from a non-party to this case. There is no evidence on the record from which a jury could reasonably find that Defendant somehow alleged that Plaintiff owed a debt to it." After finding that Ms. Young did not have standing to assert a claim under the Act based on her non-consumer status in connection with the referenced debt, the circuit court determined that she also could not succeed under a theory of common law negligence with regard to those same allegations. This ruling was based on a finding that Ms. Young had failed to show there was a legal duty on the part of EOS to

[13]The hearing was held on January 12, 2016.

"train, supervise, monitor or otherwise control its employees" to ensure that those employees comply with the provisions of the Act. As to the intentional infliction of emotional distress claim, the circuit court found the absence of any evidence from which a jury could reasonably find that EOS intentionally harassed Ms. Young or caused her severe emotional distress. As the court's ruling accurately reflects, "Plaintiff testified that she had no reaction to the phone calls about which she is complaining." In dismissing the petitioner's invasion of privacy claim, the trial court ruled there was a lack of evidence to support this claim.[14] It is from this grant of summary judgment that the petitioner seeks relief.[15]

---

[14]In making this finding the trial court reasoned as follows:

> There is no evidence that Plaintiff advised or requested Defendant to stop calling the Number; no evidence that Plaintiff advised Defendant it had a wrong telephone number; no evidence that Plaintiff advised Defendant the person it intended to reach did not live at the residence. There is no evidence that Defendant even knew or had reason to know that the Number belonged, in part, to Plaintiff. *There is not even evidence that Plaintiff ever spoke with Defendant*. (emphasis supplied)

The final sentence is disputed as the recording produced at Mr. Soule's deposition purports to be a communication between Ms. Young and an employee of EOS.

[15]The petitioner has only appealed the circuit court's grant of summary judgment with regard to the claim she brought pursuant to the Act; she has not raised any error with regard to the dismissal of her negligence, intentional infliction of emotional distress, and invasion of privacy claims.

## II. Standard of Review

Our review of this matter is plenary. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). It is axiomatic that a motion for summary judgment should only be granted when there is no genuine issue of fact to be tried and when further inquiry into the facts is not required for purposes of applying the law. *See* Syl. Pt. 3, *Aetna Cas. & Surety Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Because we must resolve whether the circuit court correctly determined that the petitioner does not qualify as a "customer" under the Act, our review is further guided by this Court's recognition that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With these principles in mind, we proceed to determine whether the circuit court committed error in its grant of summary judgment.

## III. Discussion

Seeking to expand the term "consumer," Ms. Young contends she should be permitted to pursue a cause of action against EOS under the Act despite the fact that EOS was not seeking to speak to her in connection with a debt she personally owed. According to Ms. Young, she qualifies as a "consumer" in a generic fashion based on debts she owes to creditors other than EOS' client. Alternatively, she maintains that the Act can be read as

7

allowing a claim where abusive debt collection practices are being made in connection with the debt owed by a third party. Upon examination, each of these arguments fails.

The right to seek relief under the Act is set forth in article five: "If a creditor or debt collector has violated the provisions of this chapter applying to . . . fraudulent or unconscionable conduct, any prohibited debt collection practice, . . . , the consumer has a cause of action to recover" actual damages and a penalty of $1,000 per violation. W.Va. Code § 46A-5-101(1) (2015). The Act provides two definitions of a "consumer." Under the general definitions, the term "consumer" is defined as "a natural person who incurs debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease." *Id.* at § 46A-1-102(12) (2015). Article two contains a separate definition pertaining specifically to improper credit collection practices. For those specified provisions, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." *Id.* at § 46A-2-122 (2015).

Because the petitioner specifically alleged violations of article two of the Act, the definition set forth in West Virginia Code § 46A-2-122 is the governing definition. In *Ballard v. Bank of America, N.A.*, No. 2:12-2496, 2013 WL 5963068 (S.D. W.Va. Nov. 7, 2013), the district court examined the contention that a plaintiff could come within the article two definition of a "consumer" based on the "allegedly obligated to pay" language.

8

*Id.* at *11. The court rejected the plaintiff's argument that although he was not actually obligated to repay the subject debt, he came within the purview of "allegedly obligated to pay" because of a foreclosure notice and his holding of an interest in the property that served as security for the note at issue. *Id.* Differentiating this scenario from one in which a lender personally demanded payment from a non-debtor, the district court in *Ballard* underscored how Bank of America had made clear that the plaintiff addressee of its letters "had 'no personal obligation' to repay any money." *Id.* As a result, the plaintiff failed to meet the "critical element of the definition of 'consumer' found in section 122(a)"– to show that he was "obligated or allegedly obligated to pay any debt." *Id.*, W.Va. Code § 46A-2-122.

The petitioner attempts to insinuate herself as an "alleged debtor" based solely on the repetitive phone calls made to her household. According to Ms. Young, it is logical to presume that she qualifies as an alleged debtor based on the repeated occurrence of phone calls from EOS. Where this argument fails, however, is in its assumption that the phone calls were being made in an attempt to collect a debt from the petitioner. As this case demonstrates, a creditor or its agent may lawfully seek contact with a third party such as Ms. Young in an attempt to locate the actual debtor. Significantly, there is no evidence in the record submitted in this case that EOS ever identified Ms. Young as a debtor or sought to communicate that she personally owed money. In fact, the opposite is true as the one time that Ms. Young ostensibly spoke with an EOS employee, she learned instantly that she was

9

not the individual with whom they were seeking to communicate. Like the plaintiff in *Ballard*, the petitioner "is unable to show that [s]he was at least allegedly obligated." *Ballard*, 2013 WL 5963068 at *11.

The parameters of what constitutes an "alleged obligation" was discussed in *Fabian v. Home Loan Center, Inc.*, No. 5:14-CV-42, 2014 WL 1648289 (N.D. W.Va. April 24, 2014). The plaintiffs argued in *Fabian* that their home equity debt, while discharged in bankruptcy, was still an "alleged obligation" because to avoid foreclosure on their home–the collateral for the debt–they were required to make payments. Rejecting their argument and adopting the analysis in *Ballard*, the court reasoned:

> The phrase "alleged obligation" extends the reach of the Act to certain collection activities conducted without regard to whether the debt is actually owed–as in *Croye*,[16] where the lender repeatedly asserted that the debtor was *required* to pay the debt although the debtor had no personal obligation, or as in *Diaz v. D.L. Recovery Corp.*, 486 F.Supp.2d 474, 475 (E.D. Pa. 2007), where the "debt" sought to be collected never actually existed at all. . . . *Here, plaintiffs have made no allegation that LendingTree or BONY have represented to plaintiffs that they remain personally liable on the debt*. *Croye* is therefore inapposite. *Plaintiffs have failed to demonstrate that they are allegedly obligated to pay within the meaning of the Act*.

*Fabian*, 2014 WL 1648289 at *6 (emphasis supplied and footnote added); *accord McNeely v. Wells Fargo Bank,* N.A., 115 F.Supp.3d 779, 785-86 (S.D. W.Va. 2015) (finding that ex-

---

[16]*Croye v. GreenPont Mortg. Funding, Inc.*, 740 F.Supp.2d 788 (S.D. W.Va. 2010).

10

husband lacked standing under Act despite assumption of mortgage payments following divorce because he neither signed mortgage loan nor was treated by lender as personally obligated on debt); *see also Ballard*, 2013 WL 5963068 at *11(finding that decision to continue making payments to retain collateral does not give rise to "alleged obligation" under the Act).

In *Payne v. Green Tree Servicing,* No. 2:05-cv–00293 (S.D. W.Va. March 7, 2006), the district court considered the precise issue presented in this case–the standing of a third party who received telephone calls related to a debtor's financial obligation to pursue a claim under the Act. As in this case, the defendant argued that the plaintiff, as a non-consumer, lacked standing to bring an action under the Act. And, like Ms. Young, the plaintiff in *Payne* looked to the statutory usage of "any person" with regard to the prohibited actions set forth in West Virginia Code § 46A-2-125. Given that the statute prohibits debt collectors from oppressing or abusing "any person" in connection with the collection or attempt to collect any alleged debt, Ms. Young asserted that framing a statutory violation in such an expansive manner while limiting recovery under the Act to only "consumers" rendered West Virginia Code § 46A-2-125 meaningless to non-consumers.

Rejecting this same argument in *Payne,* the district court explained that non-consumers do have a remedy for violations of the Act:

11

> [T]his argument fails because other methods exist that validly can enforce the statute's prohibition of this type of conduct to nonconsumers. For example, a nonconsumer can file a complaint with the Consumer Protection Division of the Attorney General['s] Office. Section 46A-7-103 of the West Virginia Code allows the Attorney General to "pursue any investigation, prosecute any suit and take any other proper action relating to the enforcement of any consumer protection provision in [the WVCCPA]." Moreover, because the West Virginia Supreme Court of Appeals has stated that a violation of any statute is a prima facie case of negligence, a nonconsumer can bring an action against a debt collecting company under a negligence theory. Accordingly, Ms. Payne's claim that limiting suit under the WVCCPA to "consumers" would render the application of West Virginia Code Section 46A-2-125 to nonconsumers "meaningless or useless" is without merit.

*Payne*, slip op. at pp. 4-5 (internal citation omitted). The district court reasoned further that the Legislature intended to limit the ability to bring a private cause of action under the Act to consumers. *See* W.Va. Code § 46A-5-101(1). By expressly restricting such actions to consumers, the Legislature provided that not just "any person" but only those individuals qualifying as "consumers" may seek recovery under the Act. *See id.* As the Court sagely intuited in *Payne*, "[w]hile the legislature may have wanted to prohibit excessive calls to those who were not 'consumers' as defined by the act, it also wanted to limit recovery under the act to actual 'consumers' because 'consumers' are the class of people most likely to be harmed by violations of the WVCCPA." *Payne*, slip op. at p. 6. We agree.

12

Ms. Young would like to qualify in a generic fashion as a consumer based on the fact that she owes money to creditors other than AT&T. Her attempt to cast herself as a "consumer" under the Act fails because the statutes at issue are clear that the individual seeking civil recovery must owe or allegedly owe the debt at the center of the collection activity. That the Legislature designed the Act in terms of connecting the prohibited debt collection practices to the specific debt at issue is readily apparent. Each of the three sections under which Ms. Young asserts a violation of the Act links the prohibited conduct to the collection or attempt to collect a "claim." *See* W.Va. Code §§ 46A-2-125, -127, -128. Critically, the term "claim" is defined for purposes of article two as

> *any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money*, property, insurance or service *which is the subject of the transaction* is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

W.Va. Code § 46A-2-122(b) (emphasis supplied). This statutory definition leaves no doubt that a "consumer" seeking recovery under the provisions of West Virginia Code § 46A-5-101(1) "for any prohibited debt collection practice" must be obligated or allegedly obligated to owe the specific debt at issue. In the instant case, the record makes clear that Ms. Young was neither obligated to AT&T on the debt at issue nor was she ever advised by its debt collector EOS that she was obligated on the subject debt. As discussed above, nothing in the record of this case suggests that Ms. Young had any belief that EOS was seeking to collect a debt from her–alleged or otherwise.

13

In a final attempt to persuade us that she has standing under the Act, Ms. Young looks to federal case law in which nonconsumers have been recognized to come within the ambit of the Fair Debt Collection Practices Act ("FDCPA"). *See, e.g., Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361-62 (6th Cir. 2012); *cf. Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1001 (8th Cir. 2011) (observing that "'[s]everal sections of the FDCPA . . . restrict the scope of [the FDCPA's] application by including the word 'consumer' in the text") (citations omitted). In contrast to our Act, the FDCPA broadly extends its rights of enforcement "with respect to any person." 15 U.S.C. § 1692k(a) (2012). As the Fourth Circuit recognized in *Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed.Appx. 254 (4th Cir. 2012), "any aggrieved party, not just a debtor, may bring an action under the statute [FDCPA]" absent statutory limitation. *Id.* at 257. In marked contrast to the authorizing language of the FDCPA, our Act expressly limits its grant of civil enforcement suits to "consumers." *See* W.Va. Code § 46A-5-101(1). Given this incontestable enforcement limitation, Ms. Young's contention that a coextensive grant of broad enforcement authority exists simply because the FDCPA and the Act both address debt collection practices is decidedly specious.[17]

---

[17]Counsel for Ms. Young conceded during oral argument that no existing case law, federal or state, interprets the Act in the manner he was advocating. As the district court sagely recognized in *Payne*, "[i]f the legislature wished to create a cause of action for 'any person' . . . , it would have simply used the phrase 'any person' instead of the word 'consumer' as it did in West Virginia Code Section 46A-2-125." *Payne*, *supra*, at pp. 5-6. This judicial body has no authority to rewrite legislation that clearly limits civil recovery to "consumers." If the Legislature wishes to broaden the reach of the Act's enforcement

14

Under the Act, the term "consumer" has a specific definition and only those persons meeting that definition may bring a private cause of action. Accordingly, we hold that by limiting the right to recover for a violation of the Act to those persons defined as "consumers," the Legislature has expressly prohibited any persons falling outside the definition of a "consumer" from seeking damages and statutory penalties pursuant to the provisions of West Virginia Code § 46A-5-101. Given that Ms. Young clearly does not come within the definition of "consumer" set forth in West Virginia Code § 46A-2-122, the circuit court correctly ruled that she lacked standing to pursue a claim under the Act.

## IV. Conclusion

Based on the foregoing, the February 2, 2016, order of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

provisions to nonconsumers, it may easily amend the Act's limiting language.