IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0561

_____

FILED

**April 22, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. DODRILL HEATING AND COOLING, LLC,
Defendant Below, Petitioner,

v.

THE HONORABLE MARYCLAIRE AKERS, JUDGE OF THE CIRCUIT COURT OF KANAWHA COUNTY; AND JERRY AND PAMELA WHITTINGTON, HUSBAND AND WIFE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
Plaintiffs Below, Respondents.

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED AS MOULDED

_____

Submitted: January 12, 2022
Filed: April 22, 2022

Camille E. Shora, Esq.
Wilson, Elser, Moskowitz,
Edelman & Dicker LLP
McLean, Virginia
Counsel for Petitioner

Matthew Stonestreet, Esq.
Troy Giatras, Esq.
The Giatras Law Firm, PLLC
Charleston, West Virginia
Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE HUTCHISON concurs and reserves the right to file a separate opinion.

JUSTICE WOOTON concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

JUSTICE ARMSTEAD, deeming himself disqualified, did not participate in the decision of this case.

JUSTICE ALAN D. MOATS, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 5, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3. "Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an 'injury-in-fact'— an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court." Syllabus Point 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002).

4. "A class action may only be certified if the trial court is satisfied, after a thorough analysis, that the prerequisites of Rule 23(a) of the West Virginia Rules of Civil Procedure have been satisfied. Further, the class certification order should be detailed and specific in showing the rule basis for the certification and the relevant facts supporting the legal conclusions." Syllabus Point 8, *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 607 S.E.2d 772 (2004).

5. "Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party." Syllabus Point 8, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

ii

6.     "When a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied. The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate.  In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification."  Syllabus Point 7, *State ex rel. Surnaik Holdings of West Virginia, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

7.     "A circuit court's failure to conduct a thorough analysis of the requirements for class certification pursuant to West Virginia Rules of Civil Procedure 23(a) and/or 23(b) amounts to clear error." Syllabus Point 8, *State ex rel. Surnaik Holdings of West Virginia, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

WALKER, Justice:[1]

Respondents Jerry and Pamela Whittington purchased an HVAC unit from Petitioner Dodrill Heating and Cooling LLC (Dodrill), and later sued Dodrill when they had issues with the unit. Eventually, the circuit court certified a class action based on the Whittingtons' claim that language in the documents used by Dodrill violated the West Virginia Consumer Credit Protection Act (WVCCPA), West Virginia Code § 46A-2-127(g). Dodrill seeks a writ of prohibition challenging the class certification on two grounds. First, Dodrill contends that the Whittingtons lack standing because the challenged language is no more than a threat and was never acted upon, so it is not actionable as an injury-in-fact. But because the West Virginia Legislature has determined that representations made in violation of the WVCCPA are an injury-in-fact with or without resulting damages, we deny Dodrill's writ of prohibition as to standing.

Second, Dodrill seeks to prohibit certification of a class of individuals who also received documents from Dodrill containing the language that purportedly violates the WVCCPA. Dodrill contends that the circuit court's order does not sufficiently analyze the predominance and superiority factors of Rule 23(b)(3) of the West Virginia Rules of Civil

[1] Pursuant to an administrative order entered by this Court on February 7, 2022, the Honorable Alan D. Moats, Judge of the Nineteenth Judicial Circuit, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing February 7 2022, following the resignation of former Justice Evan Jenkins. In this case, Justice Moats was temporarily assigned to hear the case due to Justice Armstead's disqualification.

1

Procedure as thoroughly as we deemed necessary in our recent opinion in *State ex rel. Surnaik Holdings of West Virginia, LLC v. Bedell*.[2] We agree with Dodrill that the circuit court's order was conclusory as to its analysis of the predominance and superiority factors addressed in *Surnaik*, but disagree that the appropriate remedy is to vacate with instructions that class certification be denied. Rather, we grant the requested writ of prohibition, but direct, as we did in *Surnaik*, that the circuit court undertake a more rigorous analysis under the parameters outlined in that case.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Respondents Jerry and Pamela Whittington, like the class they propose to represent, purchased an HVAC unit from Dodrill. The written proposal for installation the Whittingtons received from Dodrill quoted a total price of $11,995.00 and noted that "[b]uyer agrees to any reasonable attorney or collection fees incurred by seller in securing payment for this contract." Dodrill facilitated the Whittingtons' finance of the purchase through Greensky, LLC.

The Whittingtons allege that they had repeated issues with the HVAC unit, requiring Dodrill to return to their home to service the unit several times. Each time Dodrill returned to work on the unit, the written work orders provided to the Whittingtons contained the language "[i]n the event that collection efforts are initiated against me, I shall

---

[2] 244 W. Va. 248, 852 S.E.2d 748 (2020).

pay for all associated fees at the posted rates as well as all collection fees and reasonable attorney fees." The Whittingtons ultimately requested that Dodrill remove the unit and issue a full refund.

When the Whittingtons filed suit against Dodrill, they alleged negligence and violations of West Virginia Code § 46A-6-102(7) and West Virginia Code § 46A-6-104 for the omission of material terms required by the Home Improvement Rule[3] and misrepresentation and breach of warranty under the WVCCPA. The Whittingtons then sought and were granted leave to file an amended complaint converting the case to a putative class action.

The amended complaint added the claim that Dodrill had violated West Virginia Code § 46A-2-127(g) by including language in the proposal/agreement and subsequent work orders that they would be subject to pay Dodrill's attorney fees and sought class-wide relief for all individuals who had received the same proposal/agreement and work orders containing that language. After a hearing on class certification on December 15, 2020, the circuit court entered an order certifying the class on June 17, 2021. Dodrill filed the instant petition for writ of prohibition seeking to preclude certification of the class.

---

[3] The Home Improvement Rule is a legislative rule, West Virginia C.S.R. 142-5-1, *et seq.* Below, Dodrill challenged whether a private cause of action exists under those provisions, but that issue is not before the Court.

## II.    STANDARD OF REVIEW

Dodrill seeks relief in prohibition under this Court's original jurisdiction as to the Whittingtons' purported lack of standing and the circuit court's alleged failure to fully comply with Rule 23 of the West Virginia Rules of Civil Procedure in certifying the class. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1."[4] The requisite considerations for issuance of a writ of prohibition that do not involve the absence of jurisdiction are well-settled:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of

---

[4] Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

clear error as a matter of law, should be given substantial weight.[5]

With this standard in mind, we turn to the parties' arguments.

## III. ANALYSIS

As noted above, Dodrill seeks a writ of prohibition on two separate issues. First, Dodrill contends that the Whittingtons lack standing because they have only produced evidence of a "threat" to add attorney fees but have not incurred actual harm from Dodrill since the Whittingtons financed their HVAC through a third-party and Dodrill never attempted to collect a debt from the Whittingtons. Second, Dodrill challenges the circuit court's order certifying the class as non-compliant with the analysis required under Rule 23 of the West Virginia Rules of Civil Procedure. We examine these arguments in turn.

### A. Standing

Article VIII, Sections 3 and 6 of the West Virginia Constitution establish a "controversy" requirement.[6] As we have noted previously, "[o]ne of the incidents of [the]

---

[5] Syl. Pt. 5, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

[6] *See* W. VA. CONST. Art. VIII, § 3:

The court shall have appellate jurisdiction in civil cases at law where the matter in controversy, exclusive of interest and costs, is of greater value or amount than three hundred dollars unless such value or amount is increased by the Legislature; in civil cases in equity; in controversies concerning the title or boundaries of land; in proceedings in quo warranto,

controversy requirement is that a litigant have 'standing' to the challenge the action sought to be adjudicated[.]"[7]  While Section 3 pertains to appellate controversy requirements of this Court, similar parameters are imposed on the circuit courts by Section 6.  Specific to the controversy requirement under Article VIII, Section 6, we have discussed that "there must be a justiciable case or controversy—a legal right claimed by one party and denied by another—in order for the circuit court to have subject matter jurisdiction.  In part, this

habeas corpus, mandamus, prohibition and certiorari; and in cases involving personal freedom or the constitutionality of a law. It shall have appellate jurisdiction in criminal cases, where there has been a conviction for a felony or misdemeanor in a circuit court, and such appellate jurisdiction as may be conferred upon it by law where there has been such a conviction in any other court. In criminal proceedings relating to the public revenue, the right of appeal shall belong to the state as well as to the defendant. It shall have such other appellate jurisdiction, in both civil and criminal cases, as may be prescribed by law.

*See also* W. VA. CONST. ART. VIII, § 6:

Circuit courts shall have original and general jurisdiction of all civil cases at law where the value or amount in controversy, exclusive of interest and costs, exceeds one hundred dollars unless such value or amount is increased by the Legislature; of all civil cases in equity; of proceedings in habeas corpus, mandamus, quo warranto, prohibition and certiorari; and of all crimes and misdemeanors. On and after January one, one thousand nine hundred seventy-six, the Legislature may provide that all matters of probate, the appointment and qualification of personal representatives, guardians, committees and curators, and the settlements of their accounts, shall be vested exclusively in circuit courts or their officers, but until such time as the Legislature provides otherwise, jurisdiction in such matters shall remain in the county commissions or tribunals existing in lieu thereof or the officers of such county commissions or tribunals.

[7] *Coleman v. Sopher*, 194 W. Va. 90, 95 n.6, 459 S.E.2d 367, 272 n.6 (1995).

means the party asserting a legal right must have standing to assert that right."[8]  Standing,

as a more specific concept of justiciability, "refers to one's ability to bring a lawsuit based

upon a personal stake in the outcome of the controversy[,]"[9] and has been defined by this

Court as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or

right."[10]

> Standing has been further refined as follows:

> > Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"— an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.[11]

Dodrill contends that the Whittingtons cannot establish the first element of standing since

they have suffered no injury-in-fact resulting from the language in the proposal/agreement

and subsequent work order invoices.  Importantly, "standing is gauged by the specific

---

[8] *State ex rel. Healthport Tech., LLC v. Stucky*, 239 W. Va. 239, 242, 800 S.E.2d 506, 510 (2017).

[9] *Id.* at 242-43, 800 S.E.2d 509-10.

[10] *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (quoting BLACK'S LAW DICTIONARY 1413 (7th ed. 1999)).

[11] *Id.* at Syl. Pt. 5.

7

common-law, statutory or constitutional claims that a party presents."[12] And the operative inquiry is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."[13] So, we look to the statutory provision under which the Whittingtons seek relief.

The only claim at issue before us is the Whittingtons' claim under West Virginia Code § 46A-2-127(g). That provision of the WVCCPA states in relevant part:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . . .
>
> (g) Any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees . . . when in fact such fees or charges may not legally be added to the existing obligation[.]

As to this provision, Dodrill makes two arguments relating to the Whittingtons' failure to establish injury-in-fact: (1) "threat" is not an injury-in-fact because it was never enforced against the Whittingtons (i.e., there was no attempt to collect a debt under the statute); and (2) Dodrill is not a "debt collector."

---

[12] *Id.* at 95, 576 S.E.2d at 82 (quoting *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72, 77 (1991)).

[13] *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Injury-in-fact means exactly what it sounds like: that the plaintiff has, in fact, been injured in a legally recognizable way. Injury-in-fact may be "economic or otherwise"[14] but "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'"[15] "Concrete" simply means that the injury actually exists or is imminent, and, conversely, is not conjectural or hypothetical.[16] "Particularized" means that it affects the plaintiff in a personal and individual way.[17]

Practically speaking, "[i]njury in fact is easily established when a litigant demonstrates a 'direct, pocketbook injury.'"[18] In this sense, Dodrill relies on *State ex rel. Healthport Technologies, LLC v. Stucky*[19] as supporting its claim that the Whittingtons lack standing for lack of injury, arguing that "like the Whittingtons, the plaintiff in [*Healthport*] obtained a certified class action based on an alleged statutory violation without any out of

---

[14] *Healthport*, 239 W. Va. at 242, 800 S.E.2d at 510 (quoting *Snyder v. Callaghan*, 168 W. Va. 265, 275, 284 S.E.2d 241, 248 (1981)).

[15] *Id.* at 243, 800 S.E.2d at 510 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

[16] *Id.*

[17] *Id.*

[18] *Kanawha Cnty. Pub. Library Bd. v. Bd. of Educ. of Cnty. of Kanawha*, 231 W. Va. 386, 398, 745 S.E.2d 424, 436 (2013) (quoting *Barrows v. Jackson*, 346 U.S. 249, 256 (1953)).

[19] 239 W. Va. 239, 800 S.E.2d 506.

pocket loss." In *Healthport*, we dismissed (for lack of standing) a plaintiff's claim against a medical provider for overcharging for copies of medical records in violation of West Virginia Code § 16-29-2a (2014).[20] In doing so, we explained that the cost of those overpayments had been borne not by plaintiff, but by his attorneys, who had not sought reimbursement for those costs from plaintiff.[21] As a result, we concluded that plaintiff had no injury-in-fact unless and until he became contractually obligated to pay the allegedly unlawful expense.[22] Dodrill's reliance on this case is misguided, in part, because out-of-pocket loss is not a prerequisite to recover under the WVCCPA.[23]

Rather, the violation of the WVCCPA itself gives rise to civil penalties that are independent of compensatory damages.[24] In our 2013 decision in *Vanderbilt Mortgage and Finance v. Cole*, we looked at the then-effective West Virginia Code § 46A–5–101(1), which stated, in pertinent part,

> If a creditor has violated the provisions of this chapter applying to ... statements of account and evidences of payment [or] ... any prohibited debt collection practice ..., the consumer has a

---

[20] *Id.* at 241, 243-44, 800 S.E.2d at 508, 510-11.

[21] *Id.* at 243, 800 S.E.2d at 510.

[22] *Id.* at 244 800 S.E.2d at 511.

[23] *Healthport* is also distinguishable here because part of the issue in that case was *who* the statute enabled to bring the cause of action. Under the WVCCPA, "consumers" are entitled to bring the cause of action for purported violations, and Dodrill does not appear to dispute that the Whittingtons fit that definition. *See* Syl. Pt. 1, *Young v. EOSCCA*, 239 W. Va. 186, 800 S.E.2d 224 (2017).

[24] *See* W. Va. Code § 46A-5-101(1) (2017).

10

cause of action to recover actual damages *and in addition* a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.[25]

We concluded that the legislature intended actual damages and civil penalties to operate independently of one another. That is, that the recovery of civil penalties is not conditioned upon the demonstration of actual damages. In that case, we explained our conclusion based on other language in the statute:

> Following the reasoning set forth in *Dunlap*, *Harless*, and *Baker*, this Court believes that the Legislature, in creating W. Va. Code § 46A–5–101(1), has created a mechanism by which those who have suffered no quantifiable harm may yet recover civil penalties for being subject to undesirable treatment described in Article 2 of the Act. We find that by including the option for consumers to pursue civil penalties, the Legislature intended that § 46A–5–101(1) function, in part, as a disincentive for creditors to engage in certain undesirable behaviors that might not result in actual damages. Therefore, based on the language of the WVCCPA and what we perceive to be the Legislature's intent in enacting the WVCCPA, we hold that under W. Va. Code § 46A–5–101(1) (1996), an award of civil penalties is not conditioned on an award of actual damages.[26]

In 2015, the Legislature clarified the statute to that end, modifying it to read, in pertinent part: "the consumer has a cause of action to recover: (a) Actual damages; and (b) a right in

---

[25] *Vanderbilt Mortg. and Fin., Inc. v. Cole*, 230 W. Va. 505, 510, 740 S.E.2d 562, 567 (emphasis in original).

[26] *Id.* at 511, 740 S.E.2d at 568.

11

an action to recover from the person violating this chapter a penalty of $1,000 per violation."[27]

Stated plainly, violation of the WVCCPA *is* the injury-in-fact, and as to this statute in particular, "any representation" is the violation. We ask whether the Whittingtons have alleged an invasion of a legally protected interest and were damaged thereby. The Legislature has determined that individuals have a legally protected interest in remaining free from fraudulent, deceptive, and misleading *representations* similar to the one contained in the proposal/agreement and the work orders and has created a civil penalty provision for its violation without need to show corresponding out-of-pocket damage. In other words, the purported fraudulent, deceptive, misleading representation is a concrete, actual, non-hypothetical, non-conjectural injury-in-fact because the Legislature has *made* it so. The fact that Dodrill never acted upon the representation does not change that reality. As we recently explained,

> The CCPA is intended to deter deceptive practices and to protect West Virginia consumers from fraud, and the goal is to protect the public as a whole. As one state court found in interpreting a similar civil penalty statute, "Because the CCPA's civil penalty requirement is intended to punish and deter the wrongdoer and not to compensate the injured party, the CCPA is intended to proscribe deceptive acts and not the consequences of those acts." *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 972 (Colo. 1993).[28]

---

[27] W. Va. Code § 46A- 5-101 (2015). This statute was again amended in 2017, its current version, but this portion of the statute remained unchanged from the 2015 version.

[28] *State ex rel. 3M Co. v. Hoke*, 244 W. Va. 299, __, 852 S.E.2d 799, 813 (2020).

12

Dodrill's "no-harm, no foul" argument is thus unavailing. The injury-in-fact (the representation in purported violation of the WVCCPA) is likewise particularized to the Whittingtons; there can be no valid argument that the representations were not made to the Whittingtons when there is no dispute that the documents containing those representations were given directly to them.

In arguing that it is not a debt collector and that it was not attempting to collect a debt, Dodrill does not ask us to resolve the standing question – the Legislature has done that already but rather, it asks for summary judgment. Those are not "injury-in-fact" inquiries, nor are they "are-the-Whittingtons-the-proper-party-to-bring-suit" inquiries – they are *merits* inquiries. Whether Dodrill was attempting to collect a debt and qualifies as a "debt collector" goes to the merits of the Whittingtons' claims, not their standing to bring suit in seeking relief: "[t]he focus of a standing analysis is *not on the validity of the claim* but instead is 'on the appropriateness of a party bringing the questioned controversy to the court.'"[29] Discovery will tell whether the Whittingtons and, if certified, the class at large, have successfully made out their claim under the WVCCPA that Dodrill was (1) a debt collector and (2) attempting to collect a debt, but Dodrill's arguments are suited for a motion for summary judgment, not a standing challenge. We therefore conclude that the

---

[29] *Healthport*, 239 W. Va. at 243 (quoting *Findley*, 235 W. Va. at 95, 576 S.E.2d at 822 (emphasis added).

Whittingtons have established standing to bring this suit and refuse Dodrill's petition for a writ of prohibition on that ground.

**B.      *Class certification***

Dodrill petitions for a writ of prohibition on the independent ground that the circuit court failed to undertake the necessary analysis of Rule 23(b) of the West Virginia Rules of Civil Procedure in granting class certification. Specifically, Dodrill contends that the circuit court's analysis of the predominance and superiority factors falls short of the requirements discussed in *Surnaik*.[30]

In relation to class certification, the circuit court is entitled to our deference. As we have previously held, "'[w]hether the requisites for a class action exist rests within the sound discretion of the trial court.' Syllabus Point 5, *Mitchem v. Melton*, 167 W. Va. 21, 277 S.E.2d 895 (1981)."[31] But, the Rules of Civil Procedure demand a certain amount of analysis before certification is appropriate, and such analysis is not a perfunctory exercise:

> A class action may only be certified if the trial court is satisfied, after a thorough analysis, that the prerequisites of Rule 23(a) of the West Virginia Rules of Civil Procedure have been satisfied. Further, the class certification order should be detailed and specific in showing the rule basis for the

---

[30] 244 W. Va. 248, 852 S.E.2d 748 (2020).

[31] *Id.* at Syl. Pt. 7 (additional quotations and citation omitted).

14

certification and the relevant facts supporting the legal conclusions.[32]

And,

> Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party.[33]

Initially, we note that Dodrill does not raise any concerns with the circuit court's analysis of the factors under Rule 23(a) in concluding that the plaintiffs have established numerosity, commonality, typicality, and adequacy of representation. Rule 23(b) is broken up into three subsections, only one of which need be satisfied for class certification. Here we focus on subsection (3) of Rule 23(b), which provides that class certification may be appropriate if:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate

---

[32] Syl. Pt. 8, *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 607 S.E.2d 772 (2004). *See also State ex rel. W. Va. Univ. Hosps. v. Gaujot*, 242 W. Va. 54, 62, 829 S.E.2d 54 (2019).

[33] Syl. Pt. 8, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In *Surnaik*, we examined Rule 23(b)(3), directing that it, like subsection (a), is subject to a rigorous analysis.[34] We therefore held that

> When a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied. The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification.[35]

Specific to the predominance requirement, in *Surnaik*, this Court explicitly rejected any suggestion in *Rezulin* that "there is not much difference between commonality and

---

[34] *See Surnaik*, 244 W. Va. at __, 852 S.E.2d at 757.

[35] Syl. Pt. 7, *Surnaik*.

16

predominance."[36] The circuit court's order here, though citing *Surnaik* at the outset, does not apply the analysis set forth in that decision, but instead reverts to the less-nuanced, commonality-resembling analysis of the predominance factor as was set forth in *Rezulin*. The order simply concludes that the central legal question predominating the nine thousand cases was that they all involved allegations of violations of West Virginia Code § 46A-2-127(g). As a result of the circuit court's application of *Rezulin*, its conclusions as to predominance are apparently conclusory and contain none of the requisite analysis outlined in *Surnaik* as separate and apart from, and more exacting than, a commonality analysis.

Similarly, as to superiority, the order summarily concludes that class action is an efficient and superior method for resolution of the claims stemming from alleged violations of § 46A-2-127(g). Superiority is more than a mere conclusion that class action would suit as a general proposition:

> [u]nder the superiority test, a trial court must "compare [ ] the class action with other potential methods of litigation." Cleckley, Davis, & Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 23(b)(3)[2][b], at 554 (footnote omitted). *See also Nolan v. Reliant Equity Investors, LLC*, No. 3:08-CV-62, 2009 WL 2461008, at *4 (N.D. W. Va. Aug. 10, 2009) ("Superiority requires that a class action be superior to other methods for the fair and efficient adjudication of the controversy." (quotations and citations omitted)); *In re West Virginia Rezulin Litig.*, 214 W. Va. at 75, 585 S.E.2d at 75 (stating that superiority "requirement focuses upon a comparison of available alternatives").

---

[36] *Id.* at __, 852 S.E.2d at 761.

17

"Factors that have proven relevant in the superiority determination include the size of the class, anticipated recovery, fairness, efficiency, complexity of the issues and social concerns involved in the case." Cleckley, Davis, & Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 23(b)(3)[2][b], at 554 (footnote omitted). In addition, this Court has observed that consideration must be given to the purposes of Rule 23, " 'including: conserving time, effort and expense; providing a forum for small claimants; and deterring illegal activities.' " *In re West Virginia Rezulin Litig.*, 214 W. Va. at 76, 585 S.E.2d at 76 (quoting 2 Conte & Newberg, *Newberg on Class Actions* § 4:32, at 277-78).[37]

The conclusions made in the circuit court's order with respect to predominance and superiority cannot pass muster under the standards articulated in *Surnaik*, and, in fact, are more conclusory than the analysis conducted in that case. Because "[a] circuit court's failure to conduct a thorough analysis of the requirements for class certification pursuant to West Virginia Rules of Civil Procedure 23(a) and/or 23(b) amounts to clear error[,]"[38] we must grant the writ of prohibition with respect to class certification. But we do not – as Dodrill requests – vacate the order and require denial of class certification upon remand by concluding that the class *cannot* meet the predominance and superiority requirements. We simply grant the writ of prohibition and direct the circuit

---

[37] *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 527, 694 S.E.2d 815, 860 (2010).

[38] Syl. Pt 8, *Surnaik.*

18

court to undertake a more thorough analysis of those two factors under Rule 23(b)(3) to ensure class resolution is the appropriate method to adjudicate these claims.

## IV.   CONCLUSION

For the reasons set forth above, we deny Dodrill's requested writ of prohibition seeking to dismiss the Whittingtons' claims for lack of standing.  However, we agree that the June 21, 2021 order of the Circuit Court of Kanawha County granting class certification requires more analysis under Rule 23(b)(3) of the West Virginia Rules of Civil Procedure and grant the writ of prohibition as moulded.

Writ granted as moulded.