# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 17-0038

_____

FILED

**May 24, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS

STATE OF WEST VIRGINIA, EX REL.
HEALTHPORT TECHNOLOGIES, LLC and
CHARLESTON AREA MEDICAL CENTER,
Petitioners

v.

HONORABLE JAMES C. STUCKY,
Judge of the Circuit Court of Kanawha County, West Virginia; and
BASIL CROOKSHANKS, on behalf of himself and all others similarly situated,
Respondents

_____

Petition for Writ of Prohibition

WRIT GRANTED

_____

Submitted: May 3, 2017
Filed: May 24, 2017

Ancil G. Ramey, Esq.                    Edmund L. Wagoner, Esq.
Steptoe & Johnson PLLC                  David E. Goddard, Esq.
Huntington, West Virginia               Goddard & Wagoner PLLC
Russell D. Jessee, Esq.                 Clarksburg, West Virginia

**Devon J. Stewart, Esq.**        **Counsel for Respondent**
**Steptoe & Johnson PLLC**        **Basil Crookshanks**
**Charleston, West Virginia**
**Counsel for the Petitioners**


**JUSTICE KETCHUM delivered the Opinion of the Court.**


**JUSTICE DAVIS and JUSTICE WORKMAN dissent and reserve the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1."  Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

2.      "Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit.  Third, it must be likely that the injury will be redressed through a favorable decision of the court."  Syllabus Point 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002).

Justice Ketchum:

In this case, a law firm paid an invoice for a copy of a client's medical records. The law firm alleges the per-page-fee for those records was excessive under state law. However, the law firm filed a lawsuit in circuit court over the invoice in the name of the client. As we find below, because the client did not pay the invoice and has suffered no personal loss caused by the allegedly illegal fee, the client cannot show an injury in fact. The client, therefore, did not have standing to pursue the lawsuit. Consequently, we grant a writ of prohibition and direct the circuit court to dismiss the lawsuit without prejudice.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

In 2015, respondent Basil Crookshanks had abdominal surgery for a perforated bowel. In his recovery, he was a patient in a nursing home. Mr. Crookshanks alleges that the nursing home used unsterilized tools to treat his wound causing him to develop significant infections and sepsis. Thereafter, he was evacuated from the nursing home by helicopter for inpatient treatment at a hospital owned by the petitioner, Charleston Area Medical Center ("CAMC").

Mr. Crookshanks retained a law firm to investigate a potential malpractice claim against the nursing home. The law firm's contract was on a contingent basis: the firm would pay all litigation expenses (as permitted by the West Virginia Rules of

1

Professional Conduct) and would only receive a fee, and be reimbursed for its expenses, if there was a recovery on Mr. Crookshanks's behalf.

The law firm made a request to CAMC for a copy of Mr. Crookshanks's medical records. Petitioner HealthPort Technologies, LLC ("HealthPort"), responded for CAMC and sent an invoice to the law firm demanding $4,463.43, or 55 cents per page plus sales tax and shipping costs for the medical records. The law firm paid the invoice. However, the invoice troubled the law firm for two reasons: another major West Virginia hospital had charged the law firm $3.57 to copy a similar medical record; and the law firm itself spends approximately 1.4 cents per page for copying.

On October 15, 2015, Mr. Crookshanks filed a class action lawsuit against HealthPort and CAMC over the 55-cent-per-page fee for his medical records. First, Mr. Crookshanks alleged that the fee was not based on the actual cost of labor and supplies, as required by state law,[1] and therefore that HealthPort and CAMC were acting in

---

[1] W.Va. Code § 16-29-2(a) [2014] stated:

(a) A person requesting records from a provider shall place the request in writing and pay a reasonable, cost-based fee, at the time of delivery. Notwithstanding any other section of the code or rule, the fee shall be based on the provider's cost of: (1) Labor for copying the requested records if in paper, or for placing the records in electronic media; (2) supplies for creating the paper copy or electronic media; and (3) postage if the person requested that the records be mailed

Mr. Crookshanks alleged that, in violation of this statute, CAMC and HealthPort failed to charge "a reasonable, cost-based fee."

(continued . . .)

2

violation of law. Second, Mr. Crookshanks asserted (upon information and belief) that

other similarly-situated individuals requested their records from CAMC and other West

Virginia healthcare providers; that HealthPort filled those requests; and that HealthPort

---

The Legislature recently adopted significant amendments to W.Va. Code § 16-29-2. On April 7, 2017, the Legislature passed and the Governor signed Senate Bill 578, and determined it will take effect 90 days from passage. W.Va. Code § 16-29-2 [2017] states, in pertinent part:

> (a) A provider may charge a patient or the patient's personal representative a fee consistent with HIPAA [Health Insurance Portability and Accountability Act of 1996], as amended, and any rules promulgated pursuant to HIPAA, plus any applicable taxes.

> (b) A person other than a patient or patient's personal representative requesting records from a health care provider shall submit the request and HIPAA compliant authorization in writing and pay a fee at the time of delivery. Notwithstanding any other section of the code or rule, the fees shall not exceed: (1) A search and handling fee of $20; (2) a per page fee of 40 cents for paper copies; and (3) postage, if the person requested that the records be mailed, plus any applicable taxes.

> (c) If the requested record is stored by the health care provider in an electronic form, unless the person requesting the record specifically requests a paper copy, the records will be delivered in electronic or digital form and the per page fee for providing an electronic copy shall not exceed 20 cents per page but shall in no event exceed $150 inclusive of all fees, including a search and handling fee, except for applicable taxes.

The amendments to W.Va. Code § 16-29-2 have no effect on the outcome of this case.

3

charged those individuals excessive fees in violation of state law. In his complaint, Mr. Crookshanks asked the circuit court to certify his case as a class action.[2]

HealthPort and CAMC moved for summary judgment on the ground that, because Mr. Crookshanks's claims were not ripe, he did not have standing to pursue his claim. In discovery, Mr. Crookshanks admitted that he did not pay the invoice to obtain copies of his medical records. Instead, the law firm he retained paid the invoice. Additionally, Mr. Crookshanks has not reimbursed the law firm, and the contract with his lawyers specified that he would only be liable for the expense of the medical records if he recovers from a medical malpractice defendant. HealthPort and CAMC asked the circuit court to dismiss Mr. Crookshanks's claims without prejudice.

In an order dated December 14, 2016, the circuit court denied the motion for summary judgment, and found that Mr. Crookshanks could pursue a claim for the allegedly excessive costs of the medical records. On January 13, 2017, HealthPort and CAMC petitioned this Court for a writ of prohibition to stop the circuit court from exercising jurisdiction over Mr. Crookshanks's case.

## II.
## STANDARD OF REVIEW

---

[2] *See* W.Va.R.Civ.Pro. Rule 23 [1998].

"A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code 53-1-1."[3] "As jurisdictional issues are questions of law, our review is de novo."[4]

## III.
## ANALYSIS

Petitioners HealthPort and CAMC assert that the plaintiff below, Mr. Crookshanks, does not have standing to pursue a claim for excessive charges paid solely by his lawyers for copies of his medical records. The petitioners therefore contend that the circuit court has no jurisdiction over his claims. On the record presented, we agree.

HealthPort and CAMC argue that Mr. Crookshanks has not paid, and may never pay, the invoice for copies of his medical records. The allegedly excessive invoice was addressed to the law firm representing Mr. Crookshanks, and was paid by the law firm. The law firm has suffered an out-of-pocket expense, while the damages that Mr.

---

[3] Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977). *Accord*, Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.").

[4] *State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W.Va. 696, 700, 619 S.E.2d 209, 213 (2005).

Crookshanks seeks "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[5]

Mr. Crookshanks counters by arguing that this case is ripe for adjudication and that he has standing to pursue his claim. Mr. Crookshanks asserts that his lawyers are his "authorized agent or authorized representative" under the laws governing production of medical records,[6] and that his lawyers used that authority to procure copies of his CAMC medical records from HealthPort. Mr. Crookshanks asserts that the fact that his lawyers requested and paid an excessive charge for the records should have no effect on his standing to bring the claim.

Article VIII, Section 6 of the West Virginia Constitution establishes that there must be a justiciable case or controversy – a legal right claimed by one party and denied by another – in order for the circuit court to have subject matter jurisdiction.[7] In part, this means the party asserting a legal right must have standing to assert that right.

_____

[5] *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted).

[6] W.Va. Code § 16-29-1(a) [2014] provides that a health care provider "shall, upon the written request of a patient, his or her authorized agent or authorized representative, within a reasonable time, furnish a copy" of the patient's medical records "to the patient, his or authorized agent or authorized representative[.]" As noted previously, the Legislature recently amended this statute. *See supra*, footnote 1.

[7] *See generally* 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3529 (3d Ed. 2008) ("Concepts of justiciability have been developed to identify appropriate occasions for judicial action. . . . The central concepts often are elaborated into more specific categories of justiciability—advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions.").

This Court has defined "standing" as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right."[8] Standing refers to one's ability to bring a lawsuit based upon a personal stake in the outcome of the controversy.[9] Standing is composed of three elements:

> First, the party attempting to establish standing must have suffered an "injury-in-fact" — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.[10]

---

[8] *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (*quoting Black's Law Dictionary* 1413 (7th ed.1999)).

[9] *See Snyder v. Callaghan*, 168 W.Va. 265, 275, 284 S.E.2d 241, 248 (1981) ("The question of standing to sue is whether the litigant has alleged such a personal stake in the outcome of the lawsuit so as to present the court with a justiciable controversy warranting judicial resolution of the dispute."); *State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 256, 496 S.E.2d 198, 206 (1997) ("[S]tanding refers to one's ability to bring a lawsuit because he/she has such a personal stake in the outcome of the controversy as to insure the concrete adverseness upon which the court depends for illumination of the questions in the case." (Quotation and citation omitted)).

[10] Syllabus Point 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 84, 576 S.E.2d 807, 811 (2002). *See also Coleman v. Sopher*, 194 W.Va. 90, 96 n.6, 459 S.E.2d 367, 373 n.6 (1995) (same).

The focus of a standing analysis is not on the validity of the claim but instead is "on the appropriateness of a party bringing the questioned controversy to the court.'"[11]   The burden for establishing standing is on the plaintiff.

The first element in a standing inquiry is whether the plaintiff has an "injury-in-fact."  "In order to have standing to sue, a party must allege an injury in fact, either economic or otherwise, which is the result of the challenged action[.]"[12]   To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized."[13]   For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."[14]   To be a "concrete" injury, "it must actually exist."[15]   The injury must also be actual or imminent,

---

[11] *Findley*, 213 W.Va. at 95, 576 S.E.2d at 822 (*quoting Louisiana Environmental Action Network v. Browner,* 87 F.3d 1379, 1382 (D.C. Cir. 1996)).

[12] *Snyder v. Callaghan*, 168 W.Va. at 275, 284 S.E.2d at 248.

[13] *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[14] *Spokeo*, 136 S.Ct. at 1548 (citations omitted).

[15] *Id.*  "'Concrete' is not, however, necessarily synonymous with 'tangible.'  Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Id.*, 136 S.Ct. at 1549.

not conjectural or hypothetical. "Injury in fact is easily established when a litigant demonstrates a 'direct, pocketbook injury.'"[16]

In the instant case, Mr. Crookshanks has failed to establish the first element of the standing analysis: he did not show that he suffered an injury in fact, economic or otherwise. Instead, reading the underlying facts and all inferences in the light most favorable to Mr. Crookshanks, the record demonstrates that only Mr. Crookshanks's lawyers have suffered an out-of-pocket expense caused by the alleged misdeeds of HealthPort and CAMC.

The lawyers employed by Mr. Crookshanks contend that W.Va. Code § 16-29-1(d) [2014] provides that the health care records laws "may be enforced by a patient, authorized agent or authorized representative[.]" The lawyers assert that because they procured the medical records as the agent for their principal, Mr. Crookshanks, they may likewise bring a lawsuit for the excessive fees that the lawyers paid to procure those records. We reject this notion because, if Mr. Crookshanks does not a have an injury in fact, and thereby standing to bring a suit, then his agent would not have standing to bring a suit in his name. On this record, the law firm has sustained a direct pocketbook injury. Mr. Crookshanks may become contractually liable to his lawyers for this allegedly unlawful expense at a future date, but until he does, his loss is contingent and conjectural.

---

[16] *Kanawha Cty. Pub. Library Bd. v. Bd. of Educ. of Cty. Of Kanawha*, 231 W.Va. 386, 398, 745 S.E.2d. 424, 436 (2013) (quoting *Barrows v. Jackson*, 346 U.S. 249, 256 (1953)).

## IV.
## CONCLUSION

Because Mr. Crookshanks failed to establish standing to pursue his claim that HealthPort and CAMC charged excessive fees for medical records, the circuit court is without subject-matter jurisdiction to hear the case.  A writ of prohibition is therefore warranted, and the circuit court is ordered to dismiss the action below without prejudice.

Writ Granted.