# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-174

_____

FILED

**May 13, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

ALEXANDER FLEMING, CAROLE CARTER, CAROL GALLANT,
BARBARA HUMES, and BENJAMIN BUCKLEY,
Plaintiffs Below, Petitioners,

v.

MITCH CARMICHAEL, in his Official Capacity as Secretary of the West Virginia
Department of Economic Development, and
MIKE GRANEY, in his Official Capacity as Executive Director of the West Virginia
Department of Economic Development,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Kanawha County
Honorable Maryclaire Akers, Judge
Civil Action Nos. 22-C-20, 22-C-21, 22-C-22, 22-C-23, and 22-C-24

AFFIRMED

_____

Submitted: March 19, 2024
Filed: May 13, 2024

Robert M. Bastress, Jr., Esq.
Morgantown, West Virginia
Counsel for Petitioners

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Michael R. Williams, Esq.
Principal Deputy Solicitor General
Sean M. Whelan, Esq.
Deputy Attorney General
Grant A. Newman, Esq.
Assistant Solicitor General
Charleston, West Virginia
Counsel for Respondents

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court

GREEAR, Judge:

Alexander Fleming, Carole Carter, Carol Gallant, Barbara Humes, and Benjamin Buckley ("Petitioners"), appeal the March 29, 2023, order of the Circuit Court of Kanawha County granting Mitch Carmichael, in his capacity as the Secretary of the West Virginia Department of Economic Development, and Mike Graney's, in his capacity as the Executive Director of the West Virginia Department of Economic Development ("Respondents"), Motion to Dismiss.

Having reviewed this matter, we conclude that the circuit court was correct in granting the Respondents' motion on the basis that the statute at issue is a general law within the meaning of Article VI, § 39 of the West Virginia Constitution. Accordingly, we affirm the March 29, 2023, Order Granting Dismissal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2007, SWaN Hill Top House Hotel ("Developer") purchased the Hill Top House Hotel ("Hill Top") in Harpers Ferry, West Virginia, intending to rebuild the deteriorating property. However, from 2007 to 2019 the project failed to progress, increasing friction between the Developer and the town residents. In 2019, the Harpers Ferry town council executed certain street sales agreements with the Developer to enable further project development.

1

In 2020, the West Virginia Legislature enacted the Tourism Development District Act ("Act"), which has been codified at West Virginia Code § 5B-1-9 (2020). The Act authorizes the West Virginia Department of Economic Development ("Department") to designate tourism development districts ("TDD") in up to five towns which have less than 2,000 residents for projects with a minimum investment of $25 million. Upon such designation, the TDD would be exempt from nearly all municipal regulation, which includes a municipality's zoning, historic preservation, noise, land use, building permits, inspection, and licensing ordinances.[1] Instead, the TDD would be subject to the Department's regulations, and the building codes, land use, permitting, noise ordinances, and historic preservation standards in its TDD agreement which is enforced by the Department. W. Va. Code R. § 145-16-9.2.2 (2021). On May 5, 2021, the Developer sought to establish Hill Top as the first TDD. The Hill Top application was approved by the Department on August 3, 2021. The Department specifically determined the Hill Top designation would have "a significant economic impact on the state and the region" including a "marked increase in jobs and payroll in the district."

On September 17, 2021, Public Asset Protection, Inc. ("PAP"), a non-profit corporation representing the interest of several unnamed Harpers Ferry residents, filed a civil action in the Circuit Court of Jefferson County, West Virginia, *Public Asset Protection, Inc. v. Corporation of Harpers Ferry, et al.,* Civil Action No. CC-19-2021-C-

---

[1] The Act reserved a municipality's authority to collect taxes and fees from the TDD as collected by other similarly situated businesses. W. Va. Code § 5B-1-9(m) (2020).

134 (Cir. Ct. Jefferson Cty. 2021), requesting the invalidation of Harpers Ferry Ordinance No. 2021-02 ("Ordinance") which authorized the conveyance, via a private sale, of certain public streets to the Developer for the Hill Top project. The PAP complaint alleged that the Ordinance was in violation of West Virginia Code § 8-12-18 (2018) which requires a fair and adequate public auction. Additionally, and most pertinent to the matter at hand, the PAP complaint alleged the Ordinance was in violation of the existing Harpers Ferry zoning and subdivision codes.[2] The defendants in the Jefferson County civil action, the town of Harpers Ferry, its council and the Developer, filed their respective motions to dismiss. Addressing the allegations involving the existing zoning and subdivision codes application, the circuit court was forced to determine the constitutionality of the Act, West Virginia Code § 5B-1-9.[3] On January 13, 2022, the circuit court issued a final order dismissing the PAP complaint. In that order, the circuit court concluded the Act was a general law and held it to be constitutional; therefore, the Hill Top project was exempt from Harpers Ferry zoning and subdivision ordinances. PAP never appealed that order.

Two days prior to the dismissal in the PAP civil action in Jefferson County, Petitioners initiated the instant action in the Circuit Court of Kanawha County, West Virginia against Ed Gaunch, in his official capacity as Secretary of the West Virginia

[2] The PAP complaint also contained counts involving the alleged violation of public trust, public policy, and conflicts of interest.

[3] We note that on November 23, 2021, the State of West Virginia filed a *Brief of Amicus Curiae* before the circuit court defending the constitutionality of the statutes challenged by PAP.

3

Department of Commerce, and Mike Graney, in his official capacity as Director of the West Virginia Department of Economic Development.[4] Petitioners alleged: (1) the Act created a special law regulating and altering the municipal affairs of Harpers Ferry in violation of Article VI, §§ 39 and 39a of the West Virginia Constitution; (2) the Act violated equal protection because it limits the availability of TDD to towns under 2,000 residents; (3) the Act negated the plaintiffs' constitutional right to "self-rule" and "right to vote," because the Act stated that TDDs are to remain in existence notwithstanding its repeal or alteration; and, (4) it bound future Legislatures in violation of Article VI of the West Virginia Constitution. The amended complaint requested the circuit court to declare the Act void and to impose an injunction prohibiting its enforcement.

On June 24, 2022, Respondents filed their Motion to Dismiss, arguing that Petitioners were collaterally estopped on the issue of constitutionality. Alternatively, Respondents argued that if collateral estoppel did not apply, the circuit court should reach the same conclusions on these issues as the Jefferson County decision. The circuit court held a hearing on the Motion to Dismiss on August 11, 2022.

On March 29, 2023, the circuit court granted the Respondents' Motion to Dismiss. The circuit court made several conclusions of law. First, the circuit court found that collateral estoppel barred the special law and equal protection claims. Specifically, the

---

[4] We note that an amended complaint was filed on June 13, 2022, replacing Secretary Gaunch with Secretary Mitch Carmichael.

4

circuit court found that (1) the issues in the present case were identical to those in the Jefferson County decision; (2) the Jefferson County decision was a final adjudication on the merits; (3) privity existed between PAP in the prior suit and the Petitioners because both groups had aligned interests of stopping the project, and (4) the Petitioners were afforded a full and fair opportunity to litigate these claims in the prior action. Next, the circuit court determined that the Act was a law of general applicability and therefore, did not violate equal protection. It found that the Act did not single out Hill Top for unique treatment, nor did the Act draw class lines so narrowly that Hill Top would be the only TDD applicant. Instead, it concluded that the Act created a class of large tourism development projects located in West Virginia's smallest municipalities. It allowed the Department to designate five municipalities as TDDs and it applied the benefits and burdens of the statute equally upon all those designated. The circuit court found the Act passed judicial review under rational basis scrutiny and was constitutional.

The circuit court went on to find that the Act did not infringe upon Petitioners' right to "self-rule" or the "right to vote" by removing the town's authority over the Hill Top area. Instead, the circuit court determined that the Act transferred regulation of TDDs to the Department, which was responsible for considering and approving TDD applications, as well as executing the agreements that govern the TDDs. The circuit court found that the West Virginia Constitution contains no guaranteed right to "self-rule," and that municipalities have no inherent powers, as they only have the authority granted to them by the Legislature. The circuit court determined that nothing in the Act infringed on

5

the right to vote. Finally, the circuit court found the Petitioners' safety concerns without merit. The Act transferred local control to the Department and preempted local laws in conflict to provide uniform and consistent regulation. The Act did not preempt other statutes providing for the health and safety of town residents. As a final matter, the circuit court found that the Act's language did not express an intent to bind future legislatures. This appeal followed.[5]

## II.    STANDARD OF REVIEW

Our appellate review of a circuit court's order granting a motion to dismiss is de novo. *See* Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, *Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995). Examining the constitutionality of a statute is a question of law which this Court reviews de novo. *See Morrisey v. W. Va. AFL-CIO*, 243 W. Va. 86, 99, 842 S.E.2d 455, 468 (2020). With this standard in mind, we consider the issues raised on appeal.

## III.    DISCUSSION

On appeal, Petitioners allege four assignments of error. First, the Petitioners argue that the circuit court erred in finding that the Petitioners were collaterally estopped from pursuing their claims by the decision of the Circuit Court of Jefferson County in *PAP*.

---

[5] This Court held oral argument on March 19, 2024.

Second, the circuit court erred when it failed to conclude that West Virginia Code § 5B-1-9 creates local and special legislation in violation of Article VI, §§ 39 and 39a of the West Virginia Constitution. Third, the circuit court erred when it failed to conclude that West Virginia Code § 5B-1-9 creates an arbitrary and irrational classification that violates the equal protection principles embodied in Article III, § 10 of the West Virginia Constitution. Lastly, the circuit court erred when it failed to conclude that West Virginia Code § 5B-1-9 deprived Harpers Ferry residents of the political capacity to regulate and control a significant portion of the town and transferred dominion over the created district to a private entity, contravening petitioners' rights guaranteed to them by Article III, §§ 1, 3 and Article IV, § 1 of the West Virginia Constitution. After a review of the record and the applicable law, we find no merit in the Petitioners' assignments.[6] The circuit court was

---

[6] Though not raised by either party, we note the threshold issue of standing. The issuance of any injunctive relief sought in this action would require Petitioners to possess standing to assert such against Respondents. The Supreme Court of Appeals of West Virginia has recognized that "Article VIII, Section 6 of the West Virginia Constitution establishes that there must be a justiciable case or controversy—a legal right claimed by one party and denied by another—in order for the circuit court to have subject matter jurisdiction. In part, this means the party asserting a legal right must have standing to assert that right." *State ex rel. Healthport Techs., LLC v. Stucky*, 239 W. Va. 239, 242, 800 S.E.2d 506, 509 (2017) (footnote omitted). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Syl. Pt. 4, in pertinent part, *Manville Pers. Inj. Settlement Tr. v. Blankenship*, 231 W. Va. 637, 749 S.E.2d 329 (2013).

The Supreme Court has held:

> Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and

7

correct in its conclusion that the Act is constitutional.[7]

## A. GENERAL LAW

"As a general rule, [. . .] the Legislature has plenary power to act unless prohibited from doing so by the constitution itself." *State ex rel. Barker v. Manchin*, 167 W. Va. 155, 168, 279 S.E.2d 622, 631 (1981). Article VI, §39 of the West Virginia Constitution prohibits the Legislature from enacting local or special legislation regarding eighteen specified subjects, when, otherwise, a general law would be as effective. Section 39 provides, in pertinent part:

---

not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Syl. Pt. 2, *State ex rel. Healthport Techs., LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017) (citing Syl. Pt. 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002)).

To possess an "injury-in-fact," a party must allege a "particularized" injury, either economic or otherwise, which is the result of the challenged action. *See id*. at 243, 800 S.E.2d at 510. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Stucky*, 239 W. Va. at 243, 800 S.E.2d at 510. While the Respondents orally represented to this Court that Petitioners possess standing, we question Petitioners' ability to satisfy a "particularized" injury personal to them. However, given that a particular set of facts may exist to provide Petitioners standing in this matter and the Respondents have not raised such issue on appeal; we do not address it here.

[7] At oral argument, Respondents asked this Court to tailor our review to the issue of constitutionality not the application of collateral estoppel. As we find the analysis of the circuit court on the substantive issue to be correct, we decline to address the first assignment of error regarding the application of collateral estoppel.

The Legislature shall not pass local or special laws in any of the following enumerated cases; that is to say, for

[…]

Incorporating cities, towns or villages, or amending the charter of any city, town or village, containing a population of less than two thousand;

[…]

The Legislature shall provide, by general laws, for the foregoing and all other cases for which provision can be so made; and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction, and are competent to give the relief asked for.

The basic purpose of this constitutional provision is to preserve uniformity and consistency in statutory enactments. A special or local act is one applicable to only particular persons or things. *See* Syl. Pt. 1, *McEldowney v. Wyatt*, 44 W. Va. 711, 30 S.E. 239 (1898) ("A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special."). A general law, as distinguished from a special law, operates throughout our entire state to affect members of a certain designated class. *See* Syl. Pt. 7, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 741, 143 S.E.2d 351, 354 (1965) ("A law which operates uniformly upon all persons, entities or things as a class is a general law; while a law which operates differently as to particular persons, entities or things within a class is a special law.").

"When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality,

9

and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syl. Pt. 6, *State ex rel. Cooper v. Tennant*, 229 W. Va. 585, 589, 730 S.E.2d 368, 372 (2012). In recognition of the principle of the separation of powers among the judicial, legislative and executive branches; our courts are not concerned with questions relating to legislative policy. "The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. Pt. 1, *Gainer*, 149 W. Va. at 740, 143 S.E.2d at 351. In cases of doubt, intent of the Legislature not to exceed its constitutional powers is to be presumed, and courts are required to favor construction which would consider statute to be general law. *See State ex rel. Heck's Inc. v. Gates*, 149 W. Va. 421, 141 S.E.2d 369 (1965).

Petitioners allege that the Act in question is special legislation that violates Article VI, §§ 39 and 39a of the West Virginia Constitution. We disagree. West Virginia Code § 5B-1-9 authorizes the Department of Economic Development to approve up to five TDDs in municipalities under 2,000 population for private developers investing in tourism projects with projected costs exceeding $25 million. Once designated a TDD, municipalities are prohibited from "imposing or enforcing local laws and ordinances concerning the creation or regulation" of any TDD and "any tourism development project or tourism development expansion." West Virginia Code § 5B-1-9(c)(2). Once established as a tourism development district, the district may not be subject to the following:

10

(1) Municipal zoning, historic preservation, horticultural, noise, viewshed, lighting, development, or land use ordinances, restrictions, limitations, or approvals;

(2) Municipal regulation of the sale of alcoholic liquor, nonintoxicating beer, or wine for consumption within the tourism development district;

(3) Municipal building permitting, inspection, or code enforcement;

(4) Municipal license requirements;

(5) The legal jurisdiction of the municipality in which the tourism development district is entirely or partially located, except as specifically provided in this article;

(6) The implementation of any tax, fee, or charge by the municipality, except as specifically provided in this section; or

(7) Any requirement under state law for the consent or approval of the municipality in which the tourism development district is entirely or partially located of any state or county action pursuant to this code, specifically including, but not limited to, § 7-11B-1 et seq. of this code, for formal consent of the governing body of a municipality for county or state action regarding the establishment of tax increment financing development or redevelopment districts or the approval of tax increment financing development or redevelopment plans.

West Virginia Code § 5B-1-9(l).

In this instance, the Legislature decided that "it is in the best interest of the state to induce and assist in tourism development in small municipalities" because such developments could "reliev[e] unemployment" and create "greater sources of revenue" for "state and local government[s][.]" West Virginia Code § 5B-1-9(b). This expressed intent was not to alter or amend the existing charters for any small municipalities. It is to assist

11

with tourism development in the small municipalities by serving as administrators of larger monetary projects. The Act serves a valid purpose and a narrow goal of achievement.

The fact that the Hill Top project is currently the only project that has sought this designation so far is of no significance to this constitutional analysis. The Act does not single out Hill Top or Harpers Ferry for unique treatment. Nor does it draw lines so narrowly that entry is closed to future applicants. Instead, it creates a class of tourism development projects located in the State's smallest municipalities. It grants authority to the Department to designate five of these as TDDs, and it applies the benefits and burdens of the statute equally upon all those designated. While this Act is restricted to a small number of participants, such a limitation does not convert the Act into "special" legislation nor does it render it unconstitutional. Class-based designations are permitted so long as they bear reasonable relationship to proper governmental purpose, and all persons within class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate the constitutional prohibition against special acts. *See Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co*., 174 W. Va. 538, 328 S.E.2d 144 (1984). We conclude that while the class is indeed narrow; the circuit court was correct that the Act designates a class rationally related to a proper government interest and is general in its application throughout the state.

Petitioners place substantial reliance on *City of Charleston v. Bosely*, 165 W. Va. 332, 268 S.E.2d 590 (1980). In *Bosely*, the Supreme Court of Appeals of West Virginia

("SCAWV") held that the restriction of tax authority to specific political subdivisions based on population levels, to the detriment of the remainder of the State, is an arbitrary, unreasonable, and inappropriate means to implement a general statewide program for civic and economic development. *See id.* at 344, 268 S.E.2d at 597. It was therefore void as "special legislation.". *See id*. We find such reliance to be misplaced in this case. There, the Legislature sought to promote tourism and to provide for economic development and the indicia of civilization at the local level through the construction of "arenas, auditoriums, civic centers and convention centers" throughout the state. *Id.* at 340, 268 S.E.2d at 595. However, the benefit of the act was limited to the largest cities in the state, specifically Charleston and Huntington. *See id.* Therefore, the SCAWV concluded that the classification was contrary to the purpose of the legislation. *See id*. at 344, 268 S.E.2d at 597. The *Bosely* Court made it clear, "The Court's ruling today does not question the concept of population-based classification; it instead is concerned with the relationship between the classification and the legislative purpose of promoting statewide tourism and municipal development." *Id.* at 343, 268 S.E.2d at 597.

In the present case, the Legislature's intent was to narrowly tailor an Act that will benefit small municipalities and spur tourism development involving large monetary projects. On both the basis of policy and prior decisional law, such a grant of developmental authority is constitutionally valid. *See State ex rel. Appalachian Power Company v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965). A law is still "general" "even though the class" it creates "is a small one." *State ex rel. Cnty. Ct. of Cabell Cnty. v. Battle*, 147 W. Va. 84I,

13

848, 131 S.E.2d 730, 735 (1963). Therefore, we conclude this act to be of general nature, rationally related to achieve a proper governmental purpose.

## B. EQUAL PROTECTION

Petitioners allege the circuit court erred in failing to conclude that West Virginia Code § 5B-1-9 creates an arbitrary and irrational classification that violates the equal protection principles embodied in Article III, § 10 of the West Virginia Constitution. Again, we disagree. The constitutional guarantee of equal protection does not prohibit our Legislature from creating general laws with class applicability. The "special legislation" prohibition as contained in our Constitution and our analysis as shown above are essentially synonymous with an equal protection clause analysis. *See State v. Beaver*, 248 W. Va. 177, 201, 887 S.E.2d 610, 634 (2022) ("the 'special legislation' prohibition is essentially an equal protection clause"). Each serve to prevent the arbitrary creation of special classes, and the unequal conferring of statutory benefits:

> A legislative enactment in order to be valid under this clause, must operate alike on all persons and property similarly situated. As long as a statute applies uniformly upon a class, and as long as the classification utilized is neither arbitrary, nor unreasonable, the statute is general.

*Id.* at 201, 887 S.E.2d at 634 (quoting *Bosley*, 165 W. Va. 332, 339-40, 268 S.E.2d 590, 595).

We conclude West Virginia Code § 5B-1-9 is constitutional on equal protection grounds, both facially and in its application here. We find Syllabus Point 3 of *Shackleford v. Catlett*, 161 W. Va. 568, 244 S.E.2d 327 (1978) instructive:

> When all persons in a class created by a statute are treated equally and the classification is a rational one based on social, economic, historic or geographical factors, and the classification bears a rational relationship to a legitimate state purpose, such statute is not violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution or Article III, Section 17 of the West Virginia Constitution.

The subject statute "operates alike on all persons and property similarly situated," that is, on all small municipalities under 2,000 population. In other words, up to the statutory limit, any municipality meeting the population and project criteria, is eligible for designation as a TDD. As above, while the limitation of five designated development districts is small, such a limitation is within the discretion of the Legislature.

As we have determined, this Act relates to economic rights. The legislature is vested with a wide discretion in determining whatever economic policy may be deemed to promote the public welfare. The courts are of limited power to override such determinations provided the "laws passed bear a reasonable relationship to the legislative purpose and are neither arbitrary nor discriminatory." *Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W. Va. 538, 542, 328 S.E.2d 144, 148 (1984). A legislative act will satisfy equal protection so as long as the classes created are "rational," "based on social, economic, historic or geographic factors," and "bear[] a reasonable

15

relationship to a proper governmental purpose." Syl. Pt. 4, *Gibson v. W. Va. Dep't of Highways*, 185 W. Va. 214, 406 S.E.2d 440 (1991). " Equal protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner." Syl. Pt. 2, *Israel v. W. Va. Secondary Sch. Activities Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989). Nothing in West Virginia Code § 5B-1-9 has implicated different or unequal treatment to those similarly situated. While the class may be narrow, it is indeed tailored to address the narrow issue the Legislature desired to address. Therefore, we conclude the circuit court was correct. The Act is rationally related to achieve the proper governmental purpose in satisfaction of equal protection afforded under the laws of this state.

## C.    SELF-RULE

Next, we turn to the Petitioners' assignment that the Act infringes upon the constitutional rights of Harpers Ferry residents to regulate and control a significant portion of the town by transferring dominion of that district to a private entity. Petitioners allege the Hill Top project contains dangerous materials, yet the Act precludes Harpers Ferry from taking action to prevent serious harm or even investigating the facts to understand the associated risks. Further, Petitioners argue that the Act impairs their right to the beauty and heritage that the town offers in violation of Article III, §§ 1 and 3 of the West Virginia Constitution. We find no merit in this assignment.

16

The Act transfers the regulation of approved TDDs from the towns where they are located to the Department. The Department is responsible for considering and approving a developer's TDD application. West Virginia Code § 5B-1-9(d). It is also responsible for executing the agreements that will govern the TDDs construction and operation. *Id*. The agreement establishes the process whereby the Department will "monitor[] on-going compliance" with the TDD's obligations. W. Va. Code R. § 145-16-9.2.4. This transfer of authority to the Department does not deprive Plaintiffs of any guaranteed right to self-rule. A right to "self-rule" appears nowhere in the text of the West Virginia Constitution. Instead, precedent is clear: "[m]unicipalities have no inherent power;" they "depend[] solely upon grants of power" from "the Legislature." Syl. Pt. 1, *State ex rel. Plymale v. City of Huntington*, 147 W. Va. 728, 131 S.E.2d 160 (1963). The "Legislature may at any time modify, change or withdraw any power" "granted by general law" to municipalities. Syl. Pt. 3, *Cooper v. City of Charleston*, 218 W. Va. 279, 624 S.E.2d 716 (2005). Nothing prevents the Legislature from creating general legislation transferring certain authority over areas within a municipality's geographic limits to various state agencies.

## D.   RIGHT TO VOTE

Lastly, Petitioners maintain that by exempting Hill Top project from municipal regulation, the Act substantially dilutes Petitioners' "right to vote" in municipal elections, as guaranteed by Article IV, § 1 of the West Virginia Constitution. While

17

residents can still vote in municipal elections, the Petitioners argue the Act diminishes the effectiveness of such voting rights because the development will be immune from municipal control which undermines the one-person, one-vote principle. We find this concern to be unfounded. Based on a plain reading of the Act, it does nothing which would contravene anyone's right to vote. Such an action taken by the Legislature does not implicate Petitioners' right to vote in municipal elections. As to the effectiveness of such vote, it is abundantly clear that nothing prevents the Legislature from removing a municipality's ordinance enforcement when a general act of the Legislature supersedes such application. *See SWN Production Company, LLC v. City of Weirton*, 249 W. Va. 372, 895 S.E.2d 227 (Ct. App. 2023).

## IV. CONCLUSION

For the foregoing reasons, the March 29, 2023, Order of the Circuit Court of Kanawha County is hereby affirmed.

**Affirmed.**